MITCHELL *v.* HENDERSON.

4-4596

Opinion delivered April 26, 1937.

E. A. Williams, for appellant.

Edward Gordon and Harvey G. Combs, for appellee.

SMITH, J. L. E. Henderson became the tenant of E. E. Mitchell in 1921, and thereafter continued in possession of the rented land through the year, 1936. During this time three written contracts were entered into, these covering the years 1926, 1934 and 1935. For the other years there were no written contracts.

The contract for 1935 provided that it should end December 31, 1935, unless renewed by a written agreement. It required Henderson to pay as rent thirty per cent. of the proceeds of the cotton and the cottonseed, all of which was to be sold on the Morrilton market under the direction of Mitchell as gathered, and one-half of the hay, to be delivered at Mitchell's barn, with a credit of four cents per bale for baling, and one-third of all other crops were to be delivered to Mitchell as rent.

The testimony is in irreconcilable conflict as to the contract under which Henderson remained in possession of the land and cultivated it during the year, 1936. The instructions present the conflicting theories. The instruction presenting Mitchell's theory reads as follows: "If you find from the evidence in this case that the plaintiff and defendant entered into a contract for the year,

1935, and at some time during the year, Mitchell told Henderson he could stay on the place for the year, 1936, under the same terms as in 1935, then your verdict should be for the plaintiff, E. E. Mitchell, for the rent according to the terms of the, 1935, contract."

The theory of Henderson, the tenant, was submitted to the jury under an instruction reading as follows: "If, upon the other hand, you find from the testimony in the case that Mitchell told Henderson he could stay on the place, and no terms or conditions were stipulated or agreed upon by them, the court tells you that Henderson would be liable for the usual and customary rent prevailing in that community." There was a verdict and judgment in favor of Henderson.

The testimony on behalf of the parties was sufficient to sustain the respective theories, and the verdict of the jury is, therefore, conclusive of this issue of fact. Henderson testified in effect that he told Mitchell he would not continue to cultivate the land under the written contract in the latter part of August, 1935, and that if he continued in possession he would pay only the customary rent, which, according to the testimony, was one-third of the corn and one-fourth of the cotton. Henderson understood this was satisfactory from what Mitchell then said, and he had no intimation to the contrary until in November, when notice was served that he must vacate unless the written contract was renewed. But, between the date of the conversation in August and the service of the notice in November, Henderson had planted eighteen acres in wheat. The wheat was sowed on land which had previously been a thicket, which Henderson had to prepare for cultivation. When Henderson refused to renew the written contract, Mitchell caused a written notice to be served January 15, 1936, demanding the surrender of the premises. Henderson declined to surrender possession, and remained on the land during the year, 1936, and cultivated the usual crops. In the fall of that year Mitchell attached the crops on the land, the attachment being based upon the alleged grounds that Henderson was about to remove the crops from the premises with-

out paying the rent, and that he had removed a portion thereof without the consent of the landlord.

The court instructed the jury that these were statutory grounds for attachment, and that the attachment should be sustained if found to exist. The crops had not been completely gathered when the attachment was levied, but about twenty bales of cotton had been ginned. These bales of cotton were left on the gin yard, where they still were at the time of the trial. The jury specifically found that Henderson had not removed the cotton to the gin with the intention of defeating the landlord's lien, and the testimony is amply sufficient to support that finding.

Henderson testified that he was then and at all times had been willing to divide the cotton at the gin or to divide it after it was ginned in accordance with the general custom of the country, but that Mitchell had declined to make any settlement except upon the terms of the, 1935, contract. Under the verdict of the jury this was not the effective contract, and Mitchell had no right to demand settlement in accordance with its terms.

Mitchell testified that he demanded that the cotton be sold and the proceeds divided as provided in the 1935 contract, and he admitted that while Henderson declined to sell the cotton, Henderson did propose to give him one-fourth of it. Mitchell further testified: "I explained to Henderson that one-fourth was not enough." But it was enough if the 1935 contract was not effective, for that contract expired by its own terms on December 31, 1935, unless renewed, and the jury has found that it was not renewed. Henderson was, therefore, liable only for the usual and customary rent on the land, which he appears to have tendered before the trial. This tender was renewed at the trial.

The judgment must, therefore, be affirmed, and it is so ordered.